**STATE ex DUFFY v CLEVELAND (City)**

Common Pleas Court, Cuyahoga Co

No 475981. Decided Nov 21, 1939

Thomas J. Herbert, Atty. Gen., Columbus; Perry L. Graham, Asst. Atty. Gen., Columbus, and William M. Durkin, special counsel, Cleveland, for relator.

Henry S. Brainard, Director of Law, Cleveland; Grace B. Doering, Asst. Dir. of Law, Cleveland, and Charles M. White, Asst. Dir. of Law, Cleveland, for respondents.

**OPINION**

By DAY, J.

This action was brought by the attorney general in behalf of the Unemployment Compensation Commission of the State of Ohio, seeking a judgment against the city of Cleveland, a municipal corporation of this state, on a finding made by the Unemployment Compensation Commission against the respondent under which the Commission concludes that there is due from the city the sum of $86,101.84 for contributions to the unemployment compensation fund on account of the alleged employment by the respondent of listed individuals in various departments of the city who are found and alleged by the Commission to be engaged in the performance of proprietary functions only. Judgment is asked against the respondent in the above amount.

The city of Cleveland defended by amended answer denying the liability, and alleging that even though the Ohio Act be construed to cover liability in accordance with the finding, that said act would be unconstitutional and void in that it would require municipalities in Ohio to pay up to 90% of the tax provided for employers by the Social Security Act by the Congress of the United States, whilst under the terms of the Federal Act no funds are payable by municipalities to the federal government under that act.

The case is submitted by the parties on an agreed statement of facts. Briefly, the material factors presented by the stipulation of the parties are: First, the Social Security Act passed by Congress on August 14, 1935; second, the unemployment compensation insurance act passed by the state legislature on December 16, 1936, and amended on April 19th, 1937; third, the Charter of the city of Cleveland and its ordinances; fourth, the finding by the Commission; fifth, the refusal by the city to honor said finding; sixth, a list of the employes, the aggregate payroll and the taxes assessed as to each department in the city employment included in said finding; seventh, a statement of the division of departments under the plan of the city governmental arrangement; eighth, a series of ordinance sections defining the duties, functions, and authorities of the personnel in various divisions;

ninth, a stipulation that the employment service of the city is operated in co-operation with the state of Ohio; tenth, a stipulation that the division of motor vehicle maintenance, whose employes are included in the finding, serves every other department in the city government and has always billed other departments for the specific service rendered them; eleventh, a stipulation to the effect that certain services in the sewer maintenance department included in the finding had to do with connections for property owners the cost of which was assessed on the tax duplicate in the same manner as special assessments for general sewer construction; twelfth, a stipulation to the effect that in the divisions of water, heat, light and power of the department of public utilities, certain employes performed services for both divisions and the departments are billed accordingly.

The questions presented to the court are, first, does the language of the Ohio Unemployment Compensation Law, to-wit: Secs. 1345-1 and following of the **General Code** authorize the Commission to include and require contributions from the city with respect to employes found by it to be engaged in the performance of proprietary functions. Second, if said act is subject to such construction, must it be found to be unconstitutional because of being in general conflict with the Federal Security Act and thereby imposing burdens upon those subject to the act which lack uniformity and amount to discrimination.

It may be said in general with reference to the Federal Security Act that so far as it covers unemployment compensation it provides for a tax upon employers based upon a percentage of total wages paid (Section 901*, Title IX). It further provides that this taxpayer may credit 90% of this tax against the tax imposed by the provisions of any state unemployment compensation law approved by the federal board. (Section 902*, Section 903*, Title III, Section 501), and following further provide for financial assistance by the federal government to the states for the administration of their laws. Attention must also be given to subdivision 6 of Section 907*(c) which is conceded by the parties to exempt all service performed in the employ of a state or any of its subdivisions, or any of their instrumentalities, regardless of whether the services are of a proprietary or government nature. This sections is as follows:

Section 907** . . . . (c)
"The term 'unemployment' means service, of whatever nature, performed within the United States by an employee for his employer, except—

(No. 6)

"Service performed in the employ of a State, a political subdivision thereof, or an instrumentality of one or more States or political subdivisions;"

It must be noted therefore that it is conceded by the parties that employes of the city of Cleveland, or any of its instrumentalities, are not covered by the provisions of the Federal Security Act.

Very apparently, as appears by many provisions of the Ohio Act, the purpose of the legislature was to enact a law coincidental with, and parallel with, and closely co-operative with the Federal Security Act. The foundations for this conclusion will be referred to later.

The parties assume that this controversy is in a very large measure dependent upon the interpretation to be given to §1345-1, c, **Subdivision E,** (4) of the Ohio Act. The material provisions are as follows:

(E) "The term employment shall **not** include: * * * (4) service performed in the employ of any governmental unit, municipal or public corporation, political subdivision, or instrumental-

———

*See now §§1101, 1102, 1103 of Title 42 of U. S. Code.
**See now §1107 of Title 42 of U. S. Code.

ity of the United States or of one or more states or **political subdivisions in the exercise of purely governmental functions;"**

It is contended by the relator that the words "in the exercise of purely governmental functions" must be read to modify everything that precedes in subdivision 4, thereby authorizing the State Commission to include all employes of the public, no matter in what divisions, who are not in the exercise of purely governmental functions.

On the other hand, respondent contends that the words "in the exercise of purely governmental functions" can be referred back to modify nothing back of the word "instrumentality". Under this construction an instrumentality of a municipal corporation would not be included.

This discussion involves an interpretation of the meaning intended by the legislature in the use of its commas and in the use of the word "or" in the following section. Both sides present language of various courts dealing with the intendment which is to be attributed to the use of these separation devices. The relator contends that the defendant seeks to impose too drastic a meaning and presents authorities to the effect that courts frequently overlook and minimize the significance of the insertion or omission of these devices and the otherwise general language of the act, which includes service employment of every nature, is depended upon for the claim that the act includes all engaged in other than governmental functions. Respondent, on the other hand, points to decisions wherein the courts have given very important significance to these uses. The comma is manifestly a separation device intended to cut one clause from another. The word "or" is used to express an alternative, an apposition, succession, etc. but it manifestly also separates one clause from another.

Attention is called to the fact that in the first clause the term "political subdivisions" is employed in addition to the term municipal or public corpora-

tion. thus suggesting an intention on the part of the legislature to mean a different thing than a municipal corporation, else it would be surplusage. The fact that the term "political subdivision" is repeated in the last clause whilst the term "municipal corporation" is not repeated must be regarded as significant. It is surely of moment to note also that the words preceding the words "instrumentality" are separated, **both** by a comma **and** the word "or". Both of these uses would scarcely be employed if the legislature intended these preceding words to be modified by words in the latter clause. Furthermore, if the meaning contended for by the relator was that of the legislature, the logical place for the comma would have been after the word "subdivisions".

Whilst it must be admitted that the language employed is not clear, reasonable rules of construction rather support the argument of the respondent.

There can be no quarrel with the assertion that in the event of doubtful meaning, the entire act must be searched and read as a whole for the purpose of arriving at the legislative intent. Although the parties have not referred thereto, it may be of some moment to note that the language of this section pointed to has been amended since the original enactment. When the act was passed first, as it appears in **116 Ohio Laws, part 2, page 287,** the language was as follows:

" 'employer' shall not include: the United States or an instrumentality thereof; the State of Ohio or any state; any municipal or public corporation, political subdivision, governmental unit, or instrumentality of one or more states or political subdivisions in the exercise of purely governmental functions but shall include such service performed in the exercise of proprietary functions;"

When an amendment is made it may be merely for the purpose of codification or simplification intending to keep the same meaning, or a definite change of intent may be the purpose. If we

assume the legislature intended to change the meaning here, the conclusion would seem rather justified that the latest language used is more susceptible to respondent's contention than the early language. On the other hand, if we read the statute with a view of scrutinizing the early language for the purpose of discovering a consistent legislative intent throughout, we find the same confusion in the language which follows the last semicolon which exists in the later enactment.

We necessarily proceed therefore, to a study of the Ohio law, with a view to ascertaining its general intent with reference to the question presented and point to the following provisions:

**Sec. 1345-1 b (1)** in providing for that period of the year 1936 which succeeded the enactment of the Ohio Act, to-wit, December 21st to December 31st, specifies that it shall mean those who are subject for that period to the tax levied by Section 901* of the **Federal Security Act.** The intention to exclude all not covered by the federal act is apparent.

Section 1345-2 (c and d) provides for the deposit of monies received with the **Federal government.**

Section 1345-3, subdivision b, provides for "an employment service account" for public employment offices established pursuant to §15 of the Ohio Act and for cooperating with the federal employment service

Section 1345-4 (b) (1) provides that for the 1936 period remaining, the tax should be 90% **of the Federal tax** levied for that year. There cannot be any such levy as to a municipal corporation.

Section 1345-13 (9 and 10) provides for making reports to the **Federal Board** and for cooperation in the supply of information to said board.

Section 1345-34 bears a place of commanding relevancy in this discussion and is of sufficient importance to justify its complete quotation which is as follows:

"1345-34 Purpose; procedure if federal act repealed or held unconstitutional.—This act is enacted as a part of a national plan of unemployment compensation and social security, and for the purpose of assisting in the stabilization of employment conditions. **The imposition of the contributions herein imposed upon Ohio industry alone without a corresponding tax imposed upon all industry in the United States would by the penalty upon Ohio industry, defeat the purposes of this act.** Therefore this act shall remain in effect only so long as the excise tax upon employers of eight or more persons which is imposed by title IX* of the **social security act enacted by the congress** of the United States shall remain and be in effect and operative.

"When and if such tax as imposed by title IX* of said act shall be repealed or amended by Congress or held unconstitutional by the supreme court of the United States with the result **that no portion of the contributions required to be paid under this act can be credited against said tax,** then upon the effective date of such repeal, amendment or charge, **the provisions of this act shall cease to be operative** and any assets in the unemployment fund or administrative fund shall in the discretion of the state treasurer be held in the then existing depositories or otherwise held in the state treasury until provision for their disposition is made by the general assembly. In the case of the administration fund, such moneys may thereafter be dealt with by the state treasurer pursuant to the conditions of the grant of any part thereof to this state by the United States government or agency thereof. (116 v. Pt. 2, 1st, s. ses. H. 608, Sec. 34, Eff. Dec. 17, 1936)".

Reading the act as a whole, the conclusion is compelled that it was intended to be coincident with and in cooperation with the federal act. Section 1335-34 which states the purpose of the act, compels the conclusion that it

---

(*U. S. C., title 42, Section 1101).

*U. S. C. title 42, Section 1101 et seq.

was to be entirely dependent upon it and coeval with it. This section expressly declares that when the federal act goes out of existence, the said act shall cease to survive. Such an intention can not be consistent with any determination that the act is intended to cover subjects with which the federal act has nothing whatsoever to do. It is conceded that all employes of a municipal corporation are without the terms of the federal act. This purpose clause expressly states that the imposition of the contributions without a corresponding tax upon all industry in the United States would, by the penalty upon Ohio industry, defeat the purposes of the act. If the contention of the relator is allowed, the act would include the tax upon municipal corporations without a corresponding federal tax upon these entities, and adopting the language of the act, we must conclude that this defeats its purposes. The act further says that if there is a result that no part of the contributions required to be paid under the act can be credited against the federal tax, in such event the provisions of the said act shall cease to be operative. We would have that situation with reference to municipal corporations since they are not required to pay the federal tax and there could be no credit. We are thus compelled to the conclusion that it was not the intent of the legislature to include any employes who are not covered by the federal act.

We are presented with further arguments by the respondent pointing out the difficulties attendant upon any attempt to apply the act with reference to proprietary functions only. It is conceded that in a municipal corporation there are a great number of employes whose work partakes of the nature of both functions. Part of their time is devoted to purely governmental duties and part in the service of proprietary agencies. It is apparent that the law department, the financial departments, service departments and others serve as to both functions. The difficulty of disassociating and determining the specific amount of service and time alloted to each can not be overlooked.

Neither can we be unmindful of the language of the attorney general of Ohio in O. A. G. No. 2057 wherein he points to and adopts the language of the United States Supreme Court in Brush v Commission, 300 U. S. 352, as to the difficulty in determining just what are the proprietary and what are the governmental duties and of the complications invólved in applying the various tests under the confusion of the decisions, many of which quite clearly suggest that a different rule must be applied in the consideration of a tax question than that which is applied in questions involving claims of tort. We cannot hastily conclude that the legislature wished to leave the determination of this difficult issue to a mere administrative board.

We may well seriously consider the unfairness and question the logic of any attempt to separate employment into such divisions. We know of no reasonable basis in justice for such a separation. If the law covers one, it ought to cover all persons who work for the taxpayer. The fact that no other state in the Union has attempted to include public employees may well be regarded as significant.

The fact that the legislature did not set up plans for the collection of the contributions, as it did in the case of the workmen's compensation act, has a definite bearing in support of this conclusion.

Having concluded that the legislature has not expressed an intent to include the employes covered by the finding made by the commission, it is unnecessary to pass upon the constitutionality. Since it is found that the commission has no authority whatsoever in connection with these employes and with reference to the matters covered by the finding, it is entirely without jurisdiction in the premises and the argument made by relator, that the

respondent is concluded by not having followed the procedure prescribed by the act for relief against its enforcement, is of no weight. The petition therefore should be dismissed and judgment rendered for the respondent.